UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                      CASE No. 8:11-CR-89-T-23TGW

WILLIAM O. JOEL, et al.

## ORDER

THIS CAUSE came on to be heard upon defendant William O. Joel's Motion to Sever Defendant (Doc. 79) and the government's response thereto (Doc. 81). The motion was referred to me for disposition (Doc. 82). For the following reasons, the motion will be denied.

I.

The three defendants in this criminal matter, William O. Joel, Maurice Vernon, and Elton Lassiter, were charged with a conspiracy in relation to the making of fraudulent loans. The indictment alleges that the defendants perpetrated a mortgage fraud scheme from December 2005 through November 2006 in connection with the purchases of ten residential properties in Tampa, Florida. All ten properties were purchased by a single buyer named Jill Taylor who has pleaded guilty to a separate information. Taylor is awaiting sentencing, which is scheduled for December 6, 2011. See

United States v. Jill C. Taylor, Case No. 8:09-CR-522-T-24EAJ, Doc. 35. Defendant Elton Lassiter has also pleaded guilty and was sentenced to thirty-three months imprisonment, thirty-six months of supervised release, and to restitution of $954,261 (Docs. 64, 78). Lassiter and Taylor are expected to testify at the trial.

The indictment in this case states that the defendants participated in the fraudulent scheme under the umbrella of a company called Investor's Outlet, Inc. The first group of charges, Counts One through Eleven, deal with conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. 1349; with two instances of mail fraud in connection with title and loan documents in violation of 18 U.S.C. 1341; and eight instances of wire fraud in connection with the disbursing of funds to purchase properties in violation of 18 U.S.C. 1343. Finally, Counts Twelve and Thirteen of the indictment charge that the defendants, in violation of 18 U.S.C. 1014, made false statements in a loan application submitted to a financial institution.

The Government is expected to show how Joel and Vernon, operating as Investor's Outlet, recruited Taylor to purchase, fraudulently, ten residential properties. To avoid Taylor's credit score downgrade, the properties were allegedly purchased in quick succession by using false

statements on loan applications. The Government will assert that Joel acted as the knowing seller to the unqualified buyer of the residences.

The Government will try to show that Joel, among other things, arranged for bogus repairs to the properties under contract in order to obtain surplus funds at closing, which he disbursed to Vernon and Taylor. Vernon is purported to have held himself out as the Vice President of Investor's Outlet and, under the supervision of Joel, assisted in generating proceeds from fraudulent transactions. It is further alleged that Lassiter, as a loan processor, assisted Vernon and Joel with preparing fraudulent loan applications and facilitated the loans with ten different lenders.

More than a year before the indictment was returned, defendant Vernon agreed to talk to FBI Special Agent Leslie Nelson. In two interviews, Vernon made incriminating statements about his own conduct and also inculpated Joel in the scheme. Special Agent Nelson reduced those statements to writing, which Joel has filed under seal with the motion to sever.

At the hearing on the motion to sever, the parties summarized the statements made by Vernon to Special Agent Nelson. Thus, Vernon defends on the basis that he was an innocent participant who departed from Investor's

Outlet as soon as he discovered the illegality. Shifting the blame to Joel, Vernon alleged that it was Joel alone who prepared fraudulent duplicate HUD statements and falsified information on loan applications. Vernon will assert that he was an unwitting participant because Joel assured him that the ten purchases were permissible under the law. However, at some point, Vernon became suspicious and engaged the outside advice of his brother, who confirmed that Joel's actions were fraudulent. At the hearing, Joel's counsel indicated that Joel will deny Vernon's version of the facts and will rely at trial on a good faith defense. Thus, Joel may contend, among other things, that no duplicate HUD statements were prepared and that Joel had no intention of wrongdoing.

The Government intends to use the statements Vernon made to Special Agent Nelson in a joint trial of defendants Joel and Vernon, through the testimony of Special Agent Nelson. Consequently, defendant Joel has filed a motion to sever, seeking to have his case tried separately (Doc. 79). Joel asserted that his motion should be granted because his good faith defense and Vernon's defense are mutually antagonistic, which would result in an unfair trial (id., pp. 3-4). Consequently, defendant Joel requests that his trial be severed from that of his co-defendant, Vernon (id., p. 1).

II.

Federal Rule of Criminal Procedure 14(a) provides that, "[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant ..., the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." With respect to defendants who are jointly indicted, the general rule is that they should be tried together, "and this rule applies with particular force to conspiracy cases." United States v. Alvarez, 755 F.2d 830, 857 (11th Cir. 1985); see Rule 8(b), F.R.Crim.P. However, as the Eleventh Circuit has very recently discussed, "the rule about a joint trial in conspiracy cases is not quite ironclad." United States v. Lopez, —F.3d—, 2011 WL 3570298 at *8 (11th Cir. 2011); see also United States v. Hill, 643 F.3d 807, 834 (11th Cir. 2011).

While the rule is not "ironclad," the standard for deviating from a joint trial is exceeding high, justifying separate trials in only those cases presenting exceptional circumstances. United States v. Lopez, supra, 2011 WL 3570298 at *8. This is not one of those rare cases.

Recognizing severance is appropriate in only "few and far between" instances, the Court of Appeals in Lopez, supra, at **8-9, discussed

a defendant's high burden and the principles governing that burden as follows:

> A defendant seeking a severance must carry the "heavy burden of demonstrating [that] compelling prejudice" would result from a joint trial. [United States v.] Browne, 505 F.3d [1229] at 1268 [11th Cir. 2007] (quotation marks omitted). To show compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work. Zafiro [v. United States] 506 U.S. [524] at 539–41, 113 S.Ct at 938–39 [1993]; United States v. Blankenship, 382 F.3d 1110, 1122–23 (11th Cir. 2004).
>
> The potential for prejudice from a joint trial is not enough, and not just any kind of prejudice will do. For example, the Supreme Court explained in Zafiro that "[m]utually antagonistic defenses are not prejudicial per se." Zafiro, 506 U.S. at 538, 113 S.Ct. at 938; *see also* Blankenship, 382 F.3d at 1122 (noting that Zafiro "specifically rejected the notion that defendants who have contradictory defenses are inherently prejudiced"). And "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540, 113 S.Ct. at 938. Anything that increases the likelihood of a conviction "prejudices" the defendant in the ordinary sense of the word, but in severance law "prejudice" is not used in the ordinary sense of the word.

> Because limiting instructions usually will cure any prejudice resulting from a joint trial, Zafiro, 506 U.S. at 539, 113 S.Ct. at 938, the Supreme Court has indicated that severances need be granted only if there is a serious risk that a joint trial would either "compromise a specific trial right of one of the defendants" or "prevent the jury from making a reliable judgment about guilt or innocence" even if limiting instructions are given. United States v. Thompson, 422 F.3d 1285, 1292 (11th Cir. 2005) (quoting Zafiro, 506 U.S. at 539, 113 S.Ct. at 938); Browne, 505 F.3d at 1269; Blankenship, 382 F.3d at 1122. Aside from those two situations, jointly indicted defendants are not entitled to a severance. See Blankenship, 382 F.3d at 1123.

Furthermore, in another recent Eleventh Circuit opinion, United States v. Chavez, 584 F.3d 1354, 1360-61 (11th Cir. 2009), United States District Judge Wm. Terrell Hodges, sitting by designation, identified four grounds which may warrant severance, although that is rarely granted: (1) where the defendants rely upon mutually antagonistic defenses; (2) where one defendant would exculpate the moving defendant in a separate trial, but will not testify in a joint setting; (3) where inculpatory evidence will be admitted against one defendant that is not admissible against the other; and (4) where a cumulative and prejudicial "spill over" effect may prevent the jury from sifting through the evidence to make an individualized determination as to each defendant. Joel contends that his case falls in the first and third grounds

cited in Chavez, because the defendants have mutually antagonistic defenses and "otherwise inadmissible prejudicial statements made by Mr. Vernon will likely be presented to the jury in a joint trial" (Doc. 79, p. 2).

III.

As discussed, the defendants have been charged with a conspiracy to perpetrate mortgage fraud (Doc. 1). Therefore, the fact that the defendants have been charged with a conspiracy weighs strongly in favor of trying them together in a single trial rather than conducting multiple trials. United States v. Alvarez, supra, 755 F.2d at 857.

A. Joel asserts, first, that his defenses are mutually antagonistic to his co-defendant's defenses and that severance is therefore warranted because the jury will be unable to accept the conflicting theories of defense (Doc. 79, pp. 3-5). However, a defendant is not entitled to a severance merely because of antagonistic or mutually exclusive defenses. United States v. Hill, supra, 643 F.3d at 834. Rather, the standard is whether there is specific and compelling prejudice to the defendant's ability to conduct his defenses during the trial of the case. United States v. Chavez, supra, 584 F.3d at 1361; see also, United States v. Hill, supra, 643 F.3d at 828. Thus, "[m]utually antagonistic defenses are not prejudicial *per se*." Zafiro v. United States, 506

U.S. 534, 539 (1993). However, a severance may be granted if a defendant shows both that "(1) a joint trial would actually prejudice the defendant and (2) a severance is the proper remedy for the prejudice, rather than jury instructions or another remedy." Puiatti v. McNeil, 626 F.3d 1283, 1309 (11th Cir. 2010)(citations omitted). The defendant has failed to carry this burden.

In the first place, Joel's motion was vague as to the specific conflict the co-defendants' defenses present and the prejudice Joel would suffer as a result. That showing was crucial, because mutually antagonistic defenses do not necessarily give rise to prejudice. United States v. Blankenship, 382 F.3d 1110, 1122 (11th Cir. 2004). However, at the hearing, defense counsel explained that, in essence, Vernon will contend that certain actions were fraudulent, but that Joel compelled him to engage, unknowingly, in the illegal activity. Joel asserts that this defense impairs his assertion of good faith.

Clearly there is tension between the defendants' positions. Thus, Joel is asserting a good faith defense, while Vernon is bringing forth evidence of Joel's illegal intent. However, prejudice is not established simply because "a jury will conclude [either] that both defendants are lying and convict them both on that basis, or at least one of the two must be guilty without regard to

whether the Government has proved its case beyond a reasonable doubt." Id. at 1122 (citation and quotations omitted). Moreover, Joel does not show how finger pointing between co-defendants "compromise[s] a specific trial right of one of the defendants" or "prevent[s] the jury from making a reliable judgment about guilt or innocence." United States v. Lopez, supra, 2011 WL 3570298 at *9. In other words, the possible testimony by Vernon is not one of those "rare occurrences" that meets the standard of demonstrating specific and compelling prejudice. United States v . Bane, 2010 WL 882913 at **2-3 (M.D. Fla. 2010)(a defendant does not suffer compelling prejudice merely because joint participants point the finger at each other to deflect guilt).

Even assuming Vernon's statements directly inculpate Joel or that it is logically impossible for the jury to believe both co-defendant's defenses, the defendant has failed to demonstrate that any prejudice cannot be resolved by the district court giving cautionary instructions to the jury to assess the evidence against each defendant separately. This is shown by the Eleventh Circuit's decision in United States v. Blankenship, supra, 382 F.3d at 1110. Blankenship involved a motion for severance on the theory asserted by a co-defendant that the prosecution had "cast its net too far" and that it was the defendants who were, alone, responsible. Id. at 1122. The Court of

Appeals noted the strong presumption that jurors "are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered." Id. at 1123. Therefore, despite one defendant directly blaming the others, severance is not required in those circumstances. Accordingly, Blankenship demonstrates that, in this case, the defendants' mutually antagonistic defenses do not require separate trials.

B. As a second contention, defendant Joel has asserted that a possible Bruton violation may occur as a result of a joint trial (Doc. 79, pp. 5-6). In his memorandum, Joel postulates that Vernon's statements, reduced to writing by Special Agent Nelson, cannot be adequately redacted to prevent a violation of his right of confrontation. See Bruton v. United States, 391 U.S. 123 (1968). However, at the hearing, he retreated from this position and indicated that the parties may reach an agreement as to the Bruton issue. While the Government also recognizes a Bruton issue exists with respect to Vernon's statements made to the agent, it agrees that the statement can be adequately redacted, in consultation with the defendant, so that the Bruton problem is not implicated. Even if the parties cannot agree on redaction of

Vernon's statements, I have complete confidence that the District Judge will remedy any issue regarding redaction.

It is, therefore, upon consideration

ORDERED:

That defendant William O. Joel's Motion to Sever Defendant (Doc. 79) be, and the same is hereby, **DENIED**.

DONE and ORDERED at Tampa, Florida, this 9th day of September, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE